**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

CARL W. HENDERSON, JR.,                          :
ADMINISTRATOR OF THE ESTATE OF                   :
DAVID M. HENDERSON, FRANCISCO SOLIS,             :
TRUSTEE OF MESSENGER TRUST ONE,                  :
AND MICHAEL S. HENDERSON,                         :
SUCCESSOR TRUSTEE OF                             :
MESSENGER TRUST ONE,                             :
                                                 :
                          Plaintiffs,            :     **OPINION AND ORDER**
                                                 :
                                                 :
        - against -                              :     **06 Civ. 1039 (SAS)**
                                                 :
METROPOLITAN BANK & TRUST                        :
COMPANY,                                         :
                                                 :
                          Defendant.             :
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/07

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Carl W. Henderson, Jr. of Tennessee, Administrator of the Estate of

David M. Henderson; Francisco Solis, of California, Trustee of Messenger Trust

One ("the Trust"); and Michael S. Henderson, of New Mexico, Successor Trustee

of the Trust (collectively "Plaintiffs") sued Metropolitan Bank and Trust Co.

("Metrobank"), a corporation headquartered in the Philippines, for the face value

of a manager's check[1] allegedly issued by Metrobank and interest accrued since

the instrument was issued.  In an order issued on November 21, 2006 (the

"November 21 Opinion"), I granted Metrobank's motion to dismiss the Complaint

on the ground of *forum non conveniens*.[2]  On December 11, 2006, Plaintiffs moved

for relief from that order and judgment pursuant to Rule 60(b) of the Federal Rules

of Civil Procedure and, in the alternative, for reconsideration under Rule 59.[3]  For

the reasons that follow, Plaintiffs' motion for reconsideration is granted and, upon

reconsideration, Metrobank's motion to dismiss is denied.

## II.    BACKGROUND

The background to this action is fully set forth in the Court's

November 21 Opinion.[4]  In short, on March 21, 2000, a manager's check with a

---

[1]    A manager's check is a negotiable instrument akin to a cashier's check, "'which is drawn by the cashier of a bank upon the bank itself.'" Complaint ("Compl.") ¶ 8 (quoting *International Corporate Bank v. Sps. Francis S. Gueco & Ma. Luz E. Gueco*, G.R. No. 141968 (S.C., Rep. of Philippines, Feb. 12, 2001)).

[2]    *See Henderson v. Metropolitan Bank & Trust Co.*, 470 F. Supp. 2d 294, 312 (S.D.N.Y. 2006).

[3]    Plaintiffs' motion to reconsider was timely because it was filed within ten business days of the Court's entry of judgment on November 27, 2006 as required by Local Rule 6.3.

[4]    *See Henderson*, 470 F. Supp. 2d at 297-301.

2

face value of twelve billion pesos[5] was issued to Jocelyn S. Duran, as payee, for

interest payments on some accounts held at Metrobank ("the Check").[6]  When

Duran attempted to have the Check converted to cash, Metrobank dishonored the

Check.[7]  Duran then transferred the authority to negotiate the Check to Janito C.

Perez.[8]  In 2002, Perez delivered the Check to David M. Henderson and assigned

the Check to Henderson, individually and as a trustee of the Trust.[9]  Henderson

died on September 11, 2003, and his interest in the Check is an asset of his

estate.[10]

On February 9, 2006, Plaintiffs filed suit against Metrobank seeking

to enforce the Check.[11]  On November 21, 2006, this Court granted Metrobank's

---

[5]     *See* Compl. ¶ 7.  At the time the Complaint was filed, twelve billion
pesos was allegedly equivalent to more than $225 million.  *See id.*

[6]     *See id.* ¶¶ 7, 9.

[7]     *See id.* ¶ 10.

[8]     The Complaint does not state whether Duran ever endorsed or
negotiated the Check to Perez.  *See id.* ¶ 12.

[9]     *See id.* ¶ 13.  The Trust was formed on August 7, 2002.  *See id.* ¶ 5.
Plaintiffs allege that the Check was endorsed to the Trust sometime thereafter but
do not state who endorsed it or when.  *See id.* ¶ 15.

[10]    *See id.* ¶ 14.

[11]    *See id.* ¶¶ 7, 20.

motion to dismiss on the ground of *forum non conveniens,* subject to conditions

that would ensure that the Court's refusal to exercise jurisdiction in favor of the

Philippines would not prejudice Plaintiffs and the action would be resolved on the

merits.[12]

After the dismissal, Plaintiffs' counsel contacted a lawyer in the

Philippines and inquired about the rules governing the filing of the case in the

courts of the Philippines.[13]   The lawyer advised that the filing fee for a claim for

damages of twelve billion pesos was $4,898,989.90.[14]   On December 11, 2006,

---

[12]    *See Henderson*, 470 F. Supp. 2d at 311-12 (conditioning dismissal on (1) Metrobank's waiver of any statute of limitations defense, and (2) other defenses that have arisen since February 6, 2006, (3) Metrobank's good faith efforts to secure the permission of depositors in the account from which the Check was drawn so discovery about the account would not violate Philippine banking secrecy laws; and entitling plaintiffs to re-file in the United States if (1) action cannot be maintained in the Philippines, (2) Metrobank is not amenable to service in the Philippines, (3) Metrobank fails to comply with any of the conditions, or (4) Philippine courts decline to enforce any of the conditions).   The conditions imposed on the dismissal were personal in nature to the defendants, and accordingly, they did not offend principles of comity, as the Second Circuit has warned courts to avoid.   *See Gross v. British Broad. Corp.*, 386 F.3d 224, 234 (2d Cir. 2004).

[13]    *See* Plaintiffs' Motion for Relief from Order and Judgment ("Pl. Mem.") ¶ 1.

[14]    *See id.* ¶ 2 (citing 12/11/06 Affidavit of Lorenzo S. Alminaza, Plaintiffs' counsel in the Philippines ("12/11/06 Alminaza Aff.") ¶¶ 2-3).   Metrobank has not disputed Plaintiffs' assessment of the filing fee.

4

plaintiffs moved for relief from the Court's order and judgment pursuant to Rule

60(b) of the Federal Rules of Civil Procedure or, in the alternative, for

reconsideration under Rule 59.[15]  Plaintiffs have represented to the Court that they

do not have the financial resources to pay the filing fee.[16]  They have requested

that the Court reconsider the November 21 Opinion and deny Metrobank's motion

to dismiss on the ground of *forum non conveniens*.[17]

## III.   LEGAL STANDARD[18]

The standards governing motions to alter or amend judgment

pursuant to Rule 59(e) and motions for reconsideration or reargument pursuant to

Local Rule 6.3 are the same.[19]  A motion for reconsideration under Local Rule 6.3

is appropriate where "the moving party can point to controlling decisions or data

---

[15]     *See id.* ¶ 3.

[16]     *See* 4/25/07 Affidavit of Carl W. Henderson ("C. Henderson Aff.") ¶ 2; 4/26/07 Affidavit of Michael S. Henderson ("M. Henderson Aff.") ¶ 2.

[17]     *See* Pl. Mem. ¶ 3.

[18]     Plaintiffs also moved for relief from the judgment under Rule 60. Because Plaintiffs' motion for reconsideration is granted, as discussed below, there is no need to consider their Rule 60 motion.  Even if the Court were to consider that motion, however, Plaintiffs have failed to satisfy the strict standards for such relief under Rule 60.

[19]     *See 420 Avenue K LLC v. Fishman*, No. 00 Civ. 8814, 2001 WL 498402, at *1 (S.D.N.Y. May 10, 2001).

that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."[20]  Local Rule 6.3 must be "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court."[21]  A court should deny a motion for reconsideration when the movant "seeks solely to relitigate an issue already decided."[22]  The restrictive application of Local Rule 6.3 helps "to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."[23]

Reconsideration is also justified by "'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"[24]  "The granting of a motion for reconsideration is . . . within the discretion of the court whose order is the subject

---

[20]    *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003) (quotation marks and citation omitted).

[21]    *DGM Invs., Inc. v. New York Futures Exch., Inc.*, 288 F. Supp. 2d 519, 523 (S.D.N.Y. 2003) (quotation marks and citation omitted).

[22]    *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

[23]    *Naiman v. New York Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 1, 2005) (quotation marks and citation omitted).

[24]    *Doe v. New York City Dep't of Social Services*, 709 F.2d 782, 789 (2d Cir. 1983) (quoting 18 Charles Alan Wright, et al., Federal Practice and Procedure § 4478 at 790 (1981)). *Accord Cox v. Donnelly*, 432 F.3d 388, 390 (2d Cir. 2005).

of the motion."[25]

## IV.   APPLICABLE LAW

### A.   Forum Non Conveniens

A full discussion of the doctrine of *forum non conveniens* is contained in the November 21 Opinion.[26]  Nonetheless, I will briefly restate the standard here.  "*Forum non conveniens* is a discretionary device permitting a court in rare instances to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim."[27]  Courts may decline to exercise jurisdiction under this doctrine when it is determined that, weighing "relative advantages and obstacles to fair trial" in the alternative fora, and practical considerations of which forum will "make trial of a case [more] easy, expeditious and inexpensive," "the balance is strongly in favor" of the defendant's request for dismissal in favor of a more convenient forum.[28]

In deciding whether to dismiss on this ground, courts in this Circuit undertake a three-step analysis.  *First*, courts determine the degree of deference

---

[25]    *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

[26]    *See Henderson*, 470 F. Supp. 2d 301-05.

[27]    *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 100 (2d Cir. 2000) (quotation omitted).

[28]    *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947).

7

due the plaintiff's choice of forum.[29] *Second*, courts examine whether there is an adequate alternative forum for the dispute.[30] *Third*, courts balance the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration.[31] The defendant bears the burden of showing that each stage of the analysis "tilt[s] strongly in favor of trial in the foreign forum."[32] "The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable."[33]

### B.   Filing Fees Requirement in the Philippines

#### 1.   In General

When filing suit in a Philippine court, a plaintiff must pay a filing fee.[34] The amount of this filing fee is proportional to the amount of damages that

---

[29]   *See Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc).

[30]   *See id.*

[31]   *See id.* at 73-74.

[32]   *Wiwa*, 226 F.3d at 108. *Accord P.T. United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 74 (2d Cir. 1998).

[33]   *Iragorri,* 274 F.3d at 74-75.

[34]   *See* Amended Administrative Circular No. 35-2004, *available at* http://www.supremecourt.gov.ph/circulars/2004/admincirc_35_2004.htm.

the plaintiff seeks.[35]  Philippine courts lack jurisdiction over an action unless the

plaintiff either (1) pays the entire filing fee when the suit is filed,[36] or (2) is

indigent.[37]

If a plaintiff's claim is successful, the plaintiff will recover the costs

of the suit — including the filing fee — "as a matter of course."[38]  Regardless of

the outcome, however, a court has discretion to assess the costs of the action

---

[35]     *See id.*

[36]     *See* Rules of Court of the Philippines, 141(1), *available at*
http://www.supremecourt.gov.ph/rulesofcourt/RULES%20OF%20COURT.htm.
The parties stated in their joint submission to the Court that "when the initial
pleading is not accompanied by payment of the full amount of the required filing
fee, the court may allow payment of the balance of the fee within a reasonable
time." 6/4/07 Zelermyer Letter to the Court ("6/4/07 Zelermyer Letter").  After
reviewing *Sun Insurance Office, Ltd. v. Asuncion* — which the parties agree is the
leading Philippine case on the subject — it appears that a Philippine court can
allow late payment of the filing fee *only* if the clerk increases the assessment of the
filing fee after the plaintiff pays the entire initially assessed filing fee. *See Sun
Ins. Office, Ltd. v. Asuncion*, G.R. Nos. 79937-38, (S.C., Rep. of Philippines, Feb.
13, 1989), *available at* http://www.supremecourt.gov.ph/. *Accord* 5/18/07
Affidavit of Lorenzo S. Alminaza ("5/18 Alminaza Aff.") ¶¶ 5-6.

[37]     *See* Rules of Court of the Philippines, Rule 141(18).  To prove
indigence, a plaintiff who lives outside of Manilla must submit two affidavits to
the court — one from the plaintiff and one from a disinterested party — stating
that the plaintiff's gross monthly income does not exceed 3000 pesos
(approximately $64) per month and that the plaintiff does not own real property
with an assessed value of more that 50,000 pesos (less than $1,000). *See id.*

[38]     Rules of Court of the Philippines, 142(1). *Accord* 6/4/07 Zelermyer
Letter.

against either party or to divide the costs "as may be equitable" between the

parties for "special reasons."[39]

### 2.    Effect on Forum Non Conveniens Analysis

Procedural aspects of a foreign forum that differ from those of the

American legal system and that can make a lawsuit financially burdensome do not

render the foreign forum inadequate as a matter of law.[40]  Similarly, it is well

established that a forum is not inadequate as a matter of law merely because it

requires a filing fee proportionate to the damages that the plaintiff seeks, even if

the plaintiff cannot pay the filing fee.[41]  This is because a foreign legal system's

---

[39]    Rules of Court of the Philippines, 142(1).  *Accord* 5/9/07 Affidavit of
Regis V. Puno, Philippine counsel to Metrobank ("5/9/07 Puno Aff.") ¶¶ 9.1, 9.3.

[40]    *See, e.g., Murray v. British Broad. Corp.*, 81 F.3d 287, 292 (2d Cir.
1996) (holding that absence of a contingency fee system should not be considered
in deciding whether an adequate alternative forum exists, but rather as a factor in
the convenience analysis); *Gilstrap v. Radianz*, 434 F. Supp. 2d 474, 492
(S.D.N.Y. 2006) (holding that absence of contingency fees and class action
mechanism does not make an English court an inadequate forum).

[41]    *See, e.g., Sussman v. Bank of Israel*, 801 F. Supp. 1068 (S.D.N.Y.
1992), *aff'd*, 990 F.2d 71 (affirming district judge's decision to grant motion to
dismiss for *forum non conveniens* because judge acted within his discretion);
*Diatronics, Inc. v. Elbit Computers, Ltd.*, 649 F. Supp. 122, 127-28 (S.D.N.Y.
1986) (holding that Israeli courts were not an inadequate alternative forum where
plaintiff was required to pay to the court a non-refundable fee of two percent of
damages sought even where the plaintiff contended that it could not pay the fee),
*aff'd*, 812 F.2d 712 (2d Cir. 1987) (affirming without further discussion). *Accord*
*Altman v. Republic of Austria*, 317 F.3d 954, 972-73 (9th Cir. 2002) (holding that

10

rules pertaining to such procedural matters "reflect policy judgments about the goals of that legal system, the incentives for and against litigation, and the availability of representation in various circumstances."[42]

### 3.    Factor in the Balancing of Conveniences

"Balancing the plaintiff's financial burdens as one of several relevant [private] factors [in the *forum non conveniens* analysis] serves the 'repeatedly emphasized . . . need to retain flexibility' in the application of the doctrine."[43] Filing fees and other procedural differences that increase the cost of litigating in a foreign forum — even though they do not render a forum inadequate — may be

---

Austria was not inadequate forum merely because of filing fee); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (holding that filing fees and lack of discovery did not render Argentina an inadequate forum); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1353 (1st Cir. 1992) (holding that district court did not abuse its discretion when it declared that a requirement that plaintiffs post a "cost bond" did not render a Turkish court an inadequate forum).

[42]    *Gross*, 386 F.3d at 234 (reversing the dismissal of the complaint, finding that "the district court's own analysis of the private interest factors" did not tilt the balance strongly in favor of dismissal and was "plainly insufficient to overcome the initial presumption in favor of plaintiff's choice of her home forum," especially given that plaintiff was of "modest means" and for whom "the burden of litigating abroad is likely a greater obstacle" than for a large business corporation," and also finding that the district court's imposition of certain conditions intruded on the transferee forum's judicial system policies and offended principles of comity).

[43]    *Murray*, 81 F.3d at 292 (quoting *Piper Aircraft v. Reyno*, 454 U.S. 235, 249 (1981)).

considered as a private factor when considering the balance of conveniences.[44]

The court should also consider the plaintiff's financial situation in determining

how much weight to give to the expenses of litigating in the foreign forum.[45]

## V.   DISCUSSION

### A.   Reconsideration Is Granted

Plaintiffs have not pointed to any law or facts that the Court

overlooked in reaching its decision.  Rather, plaintiffs point to the filing fee they

are required to file in order to bring suit in the Philippines — which was not

---

[44]     *See Murray*, 81 F.3d at 292-93 ("[Plaintiff's] claim of financial
hardship may not be considered in determining the *availability* of an alternative
forum but must be deferred to the balancing of interests relating to the forum's
convenience." (emphasis in original)).  *See also Wiwa*, 226 F.3d at 106 (holding
that district court erred in not considering the substantial expense that dismissal in
favor of an English court would impose upon a plaintiff).  *Accord Altman*, 317
F.3d at 972-93 (holding that significant costs of litigating case in a forum with
filing fee was a factor in balancing); *Nowak v. Tak How Investments, Ltd.*, 94 F.3d
708, 720 (1st Cir. 1996) (finding the bond that plaintiffs must post for defendant's
costs in Hong Kong courts made Hong Kong an inconvenient forum for plaintiffs).
*Cf. Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 382 n.8 (5th Cir. 2002) (plaintiff's
willingness and ability to bring the lawsuit in the alternative forum does not affect
the balance of private and public interest factors where there are "no other private
or public interest factors pointing toward Texas and away from Mexico as the
proper forum," but expressing no opinion on whether the economic viability of the
lawsuit may be properly considered in other contexts).

[45]     *See Murray*, 81 F.3d at 294.

before the Court when the motion to dismiss was decided[46] — as a basis for

reconsideration.  Under the circumstances of this case, failure to consider the

impact of the filing fee in the *forum non conveniens* analysis could effect "a

manifest injustice."[47]  Plaintiffs argue that given their inability to pay the filing

fee, they are effectively foreclosed from prosecuting their claim in the alternative

forum.  Given that possibility, and its consequences, namely that the merits of the

case may not be heard, the Court finds that reconsideration of the November 21

Opinion is warranted.[48]

### B.    Upon Reconsideration, the Motion to Dismiss Is Denied

The filing fee does not have any bearing on the amount of deference

shown towards a plaintiff's choice of forum.  Nor does the fee requirement render

a forum inadequate, as discussed above.  Indeed, this Court makes no judgment as

---

[46]    It should be noted that it was Plaintiffs' responsibility to put the issue
of the filing fee before the Court in the first instance.  Information about
Philippine procedure is freely available on the internet."  *See, e.g.*, Rules of Court
of the Philippines, *available at* http://www.chanrobles.com/rulesofcourt.htm.  Had
Plaintiffs exercised due diligence, they would have found this information.

[47]    *Doe*, 709 F.2d at 789 (quotation omitted).

[48]    Indeed, taking into account the filing fee may even bring this case
within one of the situations in the Court's November 21 Opinion, where the Court
stated that it would permit plaintiffs to re-file in the United States, namely if this
action, under the circumstances, cannot be maintained in the Philippines.

to the fee requirement, which is plainly the prerogative of the Philippine court system and is an expression of its judicial policy, as is the case with many foreign courts. However, on reconsideration, the filing fee does affect the case-specific balance of the private and public factors under the present facts.

In the November 21 Opinion, I determined that both the private and public factors weighed in favor of dismissal. With respect to the private interest factors, I held that the presence of most of the relevant witnesses in the Philippines, the difficulty of subjecting some of these witnesses to compulsory process in the United States and the cost of transporting these witnesses to the United States weighed strongly in favor of dismissal.[49] With respect to the public interest factors, I held that the interests of the Philippines in adjudicating local disputes and deciding issues of local law also favored dismissal.[50]

But the balance of the private factors changes when the expense of the filing fee and Plaintiffs' financial conditions are considered. Plaintiffs face an up-front expense of almost five million dollars in order to prosecute their claim in Philippine courts, in addition to all of the other costs of litigating in a foreign forum. They cannot receive an exemption from the fee because they are not

---

[49]     *See Henderson*, 470 F. Supp. 2d at 309-10.

[50]     *See id.* at 310-11.

14

indigent by Philippine standards. Plaintiffs also cannot reduce the fee by asking for lesser damages because the action is for the face value of a negotiable instrument.[51] Plaintiffs' filing fee expense is therefore fixed as well.

Plaintiffs do not have the financial resources to pay this expense. The filing fee alone is likely to be greater than the expenses the defendant — the largest bank in the Philippines[52] — faces to defend the suit in the United States, and is significantly greater than the expenses the defendant faces to transport witnesses and documents (which may be sent electronically) to the United States. Accordingly, the tremendous weight of this expense, and Plaintiffs' inability to bear it, tilts the balance of private interest factors towards the chosen forum — the United States.

The balance of the public factors also shifts in light of the filing fee. As I noted in the November 21 Opinion, the United States has a strong interest in

---

[51]     Unlike damages in an action for personal injuries, employment discrimination or even breach of contract, where damages are sometimes subjective, the damages in a negotiable instrument claim are fixed by the face value of the negotiable instrument in controversy. *Cf. Diatronics*, 649 F. Supp. at 127-28 (plaintiffs could reduce the filing fee by seeking less damages in an action under section 10(b) of the Securities Act of 1934 and related common law contract and tort principles).

[52]     *See* Metropolitan Bank and Trust Company, Metrobank Recognized by Two Premier Institutions, *available at* http://www.metrobank.com.ph/mbtc_ bannerstory078.asp.

15

ensuring that this action is decided on its merits because some of Plaintiffs are

United States citizens and the case involves a large sum of money.[53]  Because, as a

practical matter, Plaintiffs will not be able to pursue their case in the Philippines

due to the fee, the United States has a strong interest in allowing Plaintiffs to bring

their action in an American forum.  Although the Philippines also has an interest

in adjudicating local disputes and deciding issues of local law, the balance now

tilts towards the United States.

      When the filing fee and Plaintiffs' financial situation are considered, I

now find that the public and private interest factors do not strongly favor trial in

the Philippines.  Given my determination that Plaintiffs' choice of forum is

entitled to some, albeit limited, deference, these new findings now counsel in

favor of denying Metrobank's motion to dismiss on the ground of *forum non*

*conveniens*.

---

[53]    *See Henderson*, 270 F. Supp. 2d at 311.

16

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion to reconsider the

November 21 Opinion is granted and Metrobank's motion to dismiss is denied.  A

conference is scheduled for August 16, 2007, at 4:30 p.m.  The Clerk is directed to

close this motion [Docket No. 33] and re-open this case.


SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 8, 2007

## -Appearances-

### For Plaintiffs:

Joseph J. D'Erasmo, Esq.
Joseph J. D'Erasmo & Associates
103 North Adams Street
Rockville, MD 20850
(301) 762-8865

Nizar A. DeWood, Esq.
401-B Main Street, 2nd Floor
P.O. Box 328
Laurel, MD 20725
(301) 445-7001

### For Defendant:

Benjamin Zelermyer, Esq.
Law Offices of Wesley Chen
641 Lexington Avenue
New York, NY 10022
(203) 855-8698